*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSEPH NATHAN PEREZ,

        Defendant-Appellant.

UNPUBLISHED
February 11, 2021

No. 350037
Kent Circuit Court
LC No. 18-003297-FH

Before: BECKERING, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant, Joseph Nathan Perez, of third-degree criminal sexual conduct (CSC-III), MCL 750.520d, and assault by strangulation, MCL 750.84. The trial court sentenced him as a fourth offense habitual offender, MCL 769.12, to serve concurrent prison terms of 300 to 400 months for each conviction. Defendant appeals his convictions as of right. We affirm.

## I. RELEVANT FACTS

The jury convicted defendant of assaulting an acquaintance with whom he was briefly romantically involved. The complainant testified that she accompanied defendant to a construction site, a recently remodeled home on which defendant was doing finishing work. Defendant's boss had given them permission to spend the night on an air mattress in the basement of the home. The complainant reported that defendant had been drinking, and both were smoking crack cocaine. He asked her to go to the basement with him, stating to her that he had been waiting for this moment for a long time, and that she was not going to leave the home alive. She said she attempted to calm defendant, but they began arguing and he pushed her toward the kitchen and in the direction of the basement. She yelled and bit his finger in order to make him stop, but she fell near the stairs, at which point defendant choked her and dragged her down the stairs. According to the complainant, defendant was suspicious and agitated about her relationships with other men. Once in basement he attacked her, shattered her phone when she refused to unlock it for him, poured cold water on her, choked her multiple times with his hands, causing her to have difficulty breathing, and forced his penis into her mouth and vagina. The defendant forced her to stay in the basement until the following evening, at which point she fled to a nearby church, where someone called the police.

-1-

Officer Kelly Momber arrived outside the church and first encountered defendant as he was leaving the area. Defendant denied having anything to do with any female, claiming he was simply working in the area. Officer Momber entered the church and interviewed the complainant, noting her disheveled appearance, marks and bruises on her body, and obvious physical discomfort. He transported her to a sexual assault examination site, where she underwent a sexual assault examination. At trial, defendant denied threatening the complainant, forcing her to have sex, or strangling her to the point she had difficulty breathing. He claimed their sexual relations were consensual.

## II. MISTRIAL

Defendant first argues that the trial court erred by denying his motion for a mistrial. We disagree.

This Court reviews a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Ortiz-Kehoe*, 237 Mich App 508, 513; 603 NW2d 802 (1999). A trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Before trial, the parties agreed they would not introduce evidence that defendant was on parole or wearing a tether. However, during the prosecutor's examination of the complainant about which construction sites she and defendant went to before the assaults, she offered: "Because he said because he let his tether die, and he was about to go back to jail, and he wanted to spend time with me before they caught up with him." The trial court immediately struck the remark from the record and instructed the jury not to consider it. Defendant moved unsuccessfully for a mistrial. Defendant argues on appeal that denying his motion was error because the complainant's mention of his tether could have "overpersuade[d]" the jury "to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge" *People v Crawford*, 458 Mich 376, 383-384; 582 NW2d 785 (1998).

A mistrial is warranted when an error or irregularity in the proceedings prejudices the defendant "and impairs his ability to get a fair trial." *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009) (citation omitted). A trial court should grant a mistrial with caution, *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995), and only when the error is "so egregious that its prejudicial effect can be removed in no other way." *People v Gonzalez*, 193 Mich App 263, 266; 483 NW2d 458 (1992). "[A]n isolated or inadvertent reference to a defendant's prior criminal activities will not result in reversible prejudice." *People v Wallen*, 47 Mich App 612; 209 NW2d 608, 609 (1973).

In the present case, the complainant's mention of defendant's tether was brief, isolated, and inadvertent. The prosecutor asked a proper foundational question, and instead of providing a direct response, the complainant explained why she and defendant went from one residence to another. Her unresponsive answer does not appear to have been motivated by a desire to harm defendant in the eyes of the jury. Rather, it appears to be an instance of her tendency throughout the trial to editorialize instead of providing direct answers to direct questions. In addition, the trial court immediately struck the remark and instructed the jury that it could not consider it. Jurors are presumed to follow their instructions, *People v Graves*, 458 Mich 476, 486, 581 NW2d 229 (1998),

and instructions are presumed to cure most errors, *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). "When a witness for any reason gives an irresponsive answer and which is not competent evidence, and the answer is suppressed at once, the case must be a very peculiar and very strong one which would justify a reversal for such fault or mistake of the witness." *People v Podsiad*, 295 Mich 541, 544; 295 NW 257 (1940). This is not such a case. In light of the brief, inadvertent, and isolated nature of the comment, and the court's actions, we conclude that the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

### III. THE COMPLAINANT'S CLOTHING

Defendant next argues that the trial court erred by granting the prosecutor's request to allow the complainant, who was incarcerated at the time of defendant's trial, to wear street clothes to court instead of jail attire. Defendant asserts that the trial court erroneously equated the victim's appearance before the jury with his right to appear in front of the jury in civilian clothing. Defendant's argument is without merit.

We review a trial court's decision on the physical appearance of a witness for an abuse of discretion. See *People v Banks*, 249 Mich App 247, 257; 642 NW2d 351 (2002) (reviewing a trial court's decision to handcuff or shackle a witness other than the defendant for an abuse of discretion).

Defendant opposed the prosecution's request on the ground that the complainant's appearing in jail attire would signal to the jury that she might be testifying in exchange for "some sort of extra special treatment in her own case." The trial court reasoned that it "would only be fair" to allow the complainant to wear civilian clothes since defendant would also be in civilian clothes. Addressing defendant's concern, the court told defense counsel that he could cross-examine the complainant regarding any consideration she expected in exchange for her testimony against defendant. The record does not support defendant's claim that the trial court's decision arose from an error of law. Rather, the record indicates that the court wanted the complainant to testify without the taint of jail clothing so that her appearance as a prisoner would not affect the jury's consideration of the merits of the case. Under the circumstances, we conclude that the trial court's decision was not an abuse of discretion. *Babcock*, 469 Mich at 269.

### IV. INSTRUCTIONAL ERROR

Defendant next argues that the trial court committed reversible error by noting in a limiting instruction to the jury that a witness was defendant's parole officer. We disagree.

Because this issue is unpreserved, our review is for plain error affecting substantial rights. *People v Young*, 472 Mich. 130, 135; 693 NW2d 801 (2005). To avoid forfeiture under the plain error rule, defendant must establish that an error occurred, that it was plain, i.e., clear or obvious, and that it affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130, 138 (1999). An error affected substantial rights if it affected the outcome of the lower court proceedings. *Id.* Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.*

In testimony comprising three pages of transcript in a four-day trial, Sean Wheeler testified that he was employed by the state of Michigan and had an opportunity to meet with defendant and discuss the event that occurred between defendant and the complainant. Defendant admitted during their meeting that he had choked and hit the complainant after she bit him while he was searching her mouth for drugs. On cross-examination, defense counsel asked Wheeler if the interview had been recorded. Wheeler explained that he had interviewed defendant "at the jail," and that he did not have a recording, he was basing his testimony on his memory. After Wheeler's testimony, the trial court issued a limiting instruction the jury:

> You have just heard from a parole officer regarding what [defendant] may or may not have told him. That, of course, is for you to decide. Whether or not [defendant] was, is or has ever been on parole is not something that you can consider. He is not on trial for anything other than what the charges in this case are.

Defendant argues that, by identifying Wheeler as defendant's parole officer, the trial court "went out of the way to tell the jury again that [d]efendant had a criminal record."

We first note that the trial court did not inform the jury that Wheeler was *defendant's* parole officer; just that he was *a* parole officer. Even if the jury might reasonably infer that Wheeler was defendant's parole agent, the court expressly instructed the jury not to consider Wheeler's status as a parole agent as evidence of defendant's status as a parolee, past or present, when determining whether defendant was guilty of the charged crimes.[1] As previously indicated, juries are presumed to follow the court's instructions. *Graves*, 458 Mich at 486. Further, by limiting the jury's deliberations to evidence related to "the charges in this case," the trial court protected defendant's right to be judged based only on evidence of currently charged crimes, not on any assumptions about past crimes See *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). Even if we assumed for the sake of argument that the court erred by unnecessarily identifying Wheeler as a parole agent, defendant has not shown how the court's instruction, considered as a whole, affected the outcome of his trial. Therefore, we conclude that defendant has not established a plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

## V. EXPERT WITNESS

Defendant next argues that the trial court erred by allowing Tara Nichols, the sexual assault nurse examiner (SANE) who examined the complainant, to opine that injuries to the complainant's vaginal wall were, in defendant's words, "consistent with sexual assault." As explained below, Nichols did not testify that the complainant's injuries were "consistent with sexual assault." Rather, she answered affirmatively when asked whether the injuries to the complainant's vagina

---

[1] It is also worth pointing out that defense counsel expressed his approval of the instruction after it was given, stating, "I think the Court's limiting instruction took care of any type of prejudice, especially as it related to him mentioning that he was in the custody at the jail. I don't think it's too far afield for the jurors to even believe that he's—he's in custody. But, he is here dressed in civilian clothes. So, I think that was an appropriate instruction." We could easily conclude this constituted a waiver, but we will give defendant the benefit of analyzing the matter.

were "consistent with the history" the complainant provided her.  Defendant's contention that the trial court erred in admitting this testimony is unpersuasive.

A trial court's decision on an evidentiary issue will be reversed on appeal only when there has been a clear abuse of discretion.  *People v Holtzman*, 234 Mich App 166, 190; 593 NW2d 617 (1999).  If the trial court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert may testify as to the knowledge by opinion or otherwise, if the testimony is based on sufficient facts or data, is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.  MRE 702.

In the present case, the prosecution sought to qualify Nichols as an expert in trauma and as a SANE nurse.  Nichols testified that she had an associate's degree in nursing from Highland Park Community College, a bachelor's degree in psychology from Oakland University, a bachelor's and a master's degree in nursing from the University of Michigan, and was working on a doctorate in nursing practice at the University of Minnesota.  She said she had been a nurse for 29 years, 25 of those years working for the University of Michigan in, among other things, critical care and pain management.  She currently worked full-time for Mercy Health as an advanced practice nurse specializing in pain management, and part-time with the YWCA Sexual Assault Program.  Nichols testified that she had taken a course to qualify as a SANE nurse and participated in continuing education and weekly peer reviews, but had not yet taken the SANE certification examination; she had testified as an expert nurse examiner in one previous case.  The court qualified Nichols as requested.

On appeal, defendant contends that the trial court erred by allowing Nichols to testify that the injuries to the complainant's vagina were "consistent with the history" the complainant provided Nichols because it confused the jury and vouched for the complainant's credibility.  According to defendant, the jury likely interpreted Nichols's testimony to mean that the injuries were "consistent with sexual assault."  However, the trial transcript belies this assumption.  During cross-examination of Nichols, defense counsel elicited testimony that injuries consistent with the complainant's history did not automatically mean the complainant had suffered a sexual assault.  Specifically, Nichols testified that the results of her examination did not "necessarily mean that there was an unconsented physical assault there."  She also agreed with defense counsel that the injury to the complainant's vaginal wall could have been the result of consensual sex and that there could have been various other "innocent" explanations.

Viewing Nichols's testimony as a whole makes clear that she neither implied that the complainant had suffered sexual assault or vouched for the complainant's credibility.  Nichols testified that injuries to the complainant's vaginal wall were consistent with the history the complainant provided to her, but that did not mean that the injuries were the result of sexual assault.  Thus, contrary to defendant's assumption, Nichols did not give a "stamp of scientific legitimacy to the truth of the complaining witness's factual testimony." *People v Garrison (On Remand)*, 187 Mich App 657, 658; 468 NW2d 321 (1991).  Accordingly, we conclude that the trial court did not abuse its discretion by admitting Nichols's testimony.

## VI. DIRECTED VERDICT

Defendant next argues the trial court erred in denying his motion for a directed verdict where the complainant's testimony was inherently unbelievable and contradictory to the physical evidence and her statements to Nichols. The record does not support defendant's assertion.

A defendant may move for a directed verdict of acquittal at the close of the prosecutor's case. See MCR 6.419(A); *People v Szalma*, 487 Mich 708, 720-721; 790 NW2d 662 (2010). In deciding the motion, the trial court must consider the evidence presented up to the time of the motion in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the charged crime were proved beyond a reasonable doubt. See *People v Lemmon*, 456 Mich 625, 634; 576 NW2d 129 (1998).

Defendant was charged with third-degree criminal sexual conduct. "A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if . . . [f]orce or coercion is used to accomplish the sexual penetration." MCL 750.520d(1)(b). "Force or coercion" occurs "[w]hen the actor overcomes the victim through the actual application of physical force or physical violence." See MCL 750.520b(1)(f)(*i*).

The complainant testified that, leading up to the assault, defendant would not let her out of his sight, that he said he had been "waiting for this for a long time," and that she "wasn't going to be leaving that house alive." She further testified that he physically pushed and dragged her into the basement, where he repeatedly hit her in the head, choked her, forced her to perform fellatio, and penetrated her vagina with his penis against her will. Officer Momber's testimony corroborated aspects of the complainant's account, as did the results of the SANE examination. This testimony, if believed, was sufficient to support the charged crime of CSC-III. See *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255, 262 (2016) ("In criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated."); MCL 750.520h.

Defendant was also charged with assault by strangulation. Assault by strangulation occurs when one "[a]ssaults another person by strangulation or suffocation." MCL 750.84(1)(b). "Strangulation or suffocation" is defined as "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(2). A defendant commits an assault when there is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Meissner,* 294 Mich App 438, 453-454; 812 NW2d 37 (2011) (citation and quotation marks omitted). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another . . . ." *Id.* at 454 (citation and quotation marks omitted).

The complainant testified that, after defendant forced her into the basement, he used both hands to choke her around her neck and that he strangled her "numerous times." She said it was difficult to breathe while defendant was strangling her. She reported the same to Nichols. She also told Nichols that she suffered neck pain after the assault, as well as pain while swallowing. The responding officer reported seeing bruises on the victim's head and neck, and a photograph introduced into evidence showed bruising on the complainant's neck. In addition, defendant

admitted to Wheeler that he choked the complainant. Viewing this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could find that the essential elements of assault by strangulation were proved beyond a reasonable doubt. See *Lemmon*, 456 Mich at 634.

Defendant moved for a directed verdict at the close of the prosecution's proofs. By that time, the prosecution had presented evidence that allowed the jury to find that the essential elements of CSC-III and assault by strangulation were proved beyond a reasonable doubt. Accordingly, the trial court did not err by denying defendant's motion. *Id.*

VII. STANDARD 4 ARGUMENTS[2]

A. SUFFICIENCY OF THE EVIDENCE

Defendant next argues the evidence was insufficient to support his convictions. We disagree.

This Court reviews a challenge to the sufficiency of the evidence by viewing the evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. See *Meissner*, 294 Mich App at 452. "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). The prosecutor does not have to negate every reasonable theory consistent with innocence, but is bound only to prove the elements of the offense beyond a reasonable doubt, and in the face of whatever contradictory evidence the defendant may provide. *Id.*

Defendant mounts three specific challenges to the sufficiency of the evidence. First, he concedes that the prosecution presented evidence that he was guilty of the charged crimes, but he argues that the evidence should not be believed because the complainant's testimony was not credible. Defendant points to contradictions between the complainant's trial testimony and what she said to Officer Momber and Nichols, as well as to contradictions between the complainant's testimony and the results of her SANE examination. Defendant also observes that the complainant was a difficult witness who had to be redirected on several occasions to answer questions without editorializing. Defendant contends that the complainant's testimony was inherently implausible and so rife with contradictions that the jury could only have based its decision on something other than her testimony.

The gravamen of defendant's argument is to urge this Court to replace the jury's credibility determination with its own. We decline to do so. This Court may not "determine the credibility of witnesses" –"no matter how inconsistent or vague that testimony might be." *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997); see also *Lemmon*, 456 Mich at 646-647 (stating that when

---

[2] A "Standard 4" brief refers to the brief a defendant may file in propria persona under Standard 4 of Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).

the question is one of credibility posed by diametrically opposed versions of the events in question, courts must leave the test of credibility with the trier of fact). This Court may not decide credibility because, as this Court has observed, even liars tell many truths; and it is for the fact-finder to sift the true from the false. See *People v Miceli*, 35 Mich App 176, 178; 192 NW2d 335 (1971); see also *People v Bowyer*, 108 Mich App 517, 522; 310 NW2d 445 (1981) ("It is for the jury to decide who to believe and what testimony of a particular witness to believe."). The jury's verdict indicates that it determined the complainant's testimony was credible, and defendant has given this Court no reason to displace that determination.

Next, defendant argues the evidence was insufficient to support a conviction of CSC-III because the complainant testified she did not say "no" during the sexual assaults. In addition, the complainant did not tell Officer Momber that defendant had sexually abused her until her male roommate arrived to pick her up, 16 minutes into the interview with the officer. According to defendant, this delay suggests the complainant manufactured allegations of sexual abuse so she would not have to explain to her roommate that she had been partying with defendant for several days. Defendant's arguments and assertions are unconvincing.

The CSC-III statute does not require a victim of sexual assault to say "no"; it only requires the use of force or coercion to accomplish sexual penetration. MCL 750.520d(1)(b). As already indicated, the prosecution presented sufficient evidence to establish this element of the CSC-III charge. To the extent that defendant is implying that sex with the complainant was consensual, the complainant's testimony that she resisted by pleading, "why are you doing this," and by twice telling defendant to stop contradict such implication. Accordingly, the prosecution presented sufficient evidence to allow a jury to reasonably conclude that defendant used force to accomplish sexual penetration. Regarding the complainant's alleged motive to fabricate the assault, the jury had an opportunity to assess the complainant's believability by observing her and listening to her recount her allegations several times, and they apparently deemed her credible. We will not replace the jury's credibility determination with our own. See *Mehall*, 454 Mich at 6.

Lastly, defendant argues that, because the complainant admitted she was faking being unable to breathe, the prosecutor did not prove defendant strangled the complainant. Notably, the complainant stated that she faked being unable to breathe and acted like she was having a seizure precisely *because* defendant was choking her and she was having difficulty breathing and wanted him to stop. She repeated this claim to Nichols. Moreover, defendant, Officer Momber, and Nichols testified that the complainant had bruising and abrasions on her neck, and Nichols noted that the complainant suffered pain in her neck. Viewed in the light most favorable to the prosecution, this evidence was sufficient to allow a rational jury to determine beyond a reasonable doubt that defendant assaulted the complainant by strangulation. See *Meissner*, 294 Mich App at 452.

## B. INEFFECTIVE ASSISTANCE

Defendant raises several claims of ineffective assistance in his standard 4 brief. We find none of them persuasive.

We review de novo the constitutional question of whether an attorney provided ineffective assistance depriving a defendant of his right to counsel. *People v Unger* (*On Remand*), 278 Mich

App 210, 242; 749 NW2d 272 (2008). Because we denied defendant's motion to remand for a *Ginther* hearing,[3] our review is limited to mistakes apparent on the record. *People v Dunigan*, 299 Mich App 579, 586; 831 NW2d 243 (2013).

To establish an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). Counsel's performance is constitutionally deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Deficient performance is prejudicial if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id*. The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

## 1. IMPEACHMENT EVIDENCE

Defendant first contends that trial counsel performed deficiently by failing to impeach the complainant with prior retail fraud and drug-related convictions.

Evidence that a witness has been convicted of a crime may be used for impeachment purposes if "the evidence has been elicited from the witness or established by public record during cross-examination" and the crime contains an element of dishonesty, false statement, or theft. If the crime contains an element of theft, it must also have been punishable by imprisonment in excess of one year or death under the law under which the witness was convicted." In addition, the evidence is admissible only if the trial court determines it "has significant probative value on the issue of credibility . . . ." MRE 609.

The record in the present case shows that the prosecutor told the court and defendant's counsel that it would provide the complaining witness's criminal history prior to the opening of proofs. There is no indication that this did not happen. Given the presumption of effective assistance, *Rodgers*, 248 Mich App at 714, it seems plausible that defense counsel either could not use the complainant's prior convictions for impeachment purposes because they did not conform to the requirements of MRE 609, or chose not to use them. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation marks and citation omitted).

Even if we were to view trial counsel's decision not to impeach the complainant with prior convictions as performance falling "below an objective standard of professional reasonableness," *Jordan*, 275 Mich App at 667, defendant has not shown how, but for counsel's decision, the outcome of his trial would have been different. Through effective cross-examination, defense counsel identified for the jury's consideration various inconsistencies in the complainant's testimony and contradictions between her testimony and what she told other prosecution witnesses.

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). See *People v Perez*, unpublished order of the Court of Appeals, entered September 11, 2020 (Docket No. 350037).

Counsel also raised critical questions about the interpretation of the results of the SANE examination. Given defense counsel's effective attack on critical prosecution evidence, defendant has not shown how introducing evidence of the complainant's prior conviction of retail fraud would have tipped the scale in his favor.

Defendant also argues that trial counsel should have called four witnesses who saw defendant and the complainant together at the home where the incidents occurred: his boss, his boss's wife, and two workers. Defendant claims that these witnesses would have testified that he and the complainant were "kissing, flirting, and acting very happy" at the time the complainant alleged prolonged abuse had occurred. Defendant offers no proof that the witnesses would have testified as he claims. Further, assuming that the witnesses would have testified in accordance with defendant's assertions, defendant has not shown that their testimony would have had any bearing on the outcome of the case. See *Jordan*, 275 Mich App at 667.

The testimony defendant asserts trial counsel should have elicited from defendant's proposed witnesses would not have contradicted the complainant's testimony, nor would it have shed light on what happened in the basement. The complainant testified at trial that she and defendant had had a dating relationship that included consensual sex, and, although they were not dating at the time of the assault, they were spending time together because defendant "wanted to try to work things out" and she agreed to talk with him. The proposed witnesses' anticipated testimony that defendant and the complainant were interacting happily does not contradict this. In addition, nothing in the complainant's or defendant's testimony indicates that any of defendant's proposed witnesses were in the basement during the time defendant was assaulting her. In fact, defendant testified that he and the complainant were in the basement together "after everybody left." Given the foregoing, and considering that whether to call witnesses is a matter of trial strategy that we will not second guess, *Dixon*, 263 Mich App at 398, we conclude that defendant has not established that trial counsel's failure to call these witnesses constituted deficient performance.

Defendant further contends that trial counsel rendered deficient performance by failing to admit texts and pictures from defendant's cell phone showing that he and defendant were "having a good time." As noted above, however, the complainant's testimony indicated that the two were "having a good time" before defendant became threatening and assaultive; texts and pictures showing the same would have substantiated the complainant's testimony rather than impeached her credibility.

Finally, defendant contends that trial counsel performed deficiently by failing to file a notice under MCL 750.520j and seek to admit evidence of: the prior sexual relationship between defendant and the complainant; their having met on backpage.com; the complainant's alleged occupation of sex worker; the complainant's alleged sexual relationship with her current roommate, which defendant asserts provided a motive for fabricating allegations against him; the SANE examination results revealing the presence of DNA from multiple donors; and the results of a polygraph test, which defendant implies would show that he was telling the truth.

As already discussed, evidence of a prior sexual relationship between defendant and the complainant was admitted at trial. Likewise, the prosecution's expert DNA analyst testified that analysis of the DNA sample taken from the complainant's vaginal wall came from three

indeterminable donors.[4]  Admissibility of the remaining evidence would have been subject to the rape-shield statute, MCL 750.520j, which provides in pertinent part:

> Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g1 unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

The rape-shield statute allows admission of certain evidence of a rape victim's sexual conduct. The evidence must be that "of the victim's past sexual conduct with the actor," or "evidence of specific instances of sexual activity showing the source or origin of semen." Defendant fails to explain how evidence that he and the complainant met on backpage.com. or that the complainant allegedly is a sex worker is "material to a fact at issue in the case," or that the probative value of the evidence outweighed its "inflammatory or prejudicial nature." In addition, defendant offers no evidence of a "specific instance of sexual activity" between the complainant and her current roommate, let alone evidence that the roommate was one of the donors of the DNA samples recovered during her SANE examination. Finally, the credibility of the complainant's testimony alleging that defendant sexually and physically assaulted her was a matter for the jury to decide. See *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003) ("The bright-line rule that evidence relating to a polygraph examination is inadmissible is well established.").

In light of the evidence of the complainant's sexual conduct that was admitted, and considering that defendant has failed to show that the remaining proposed evidence was admissible under the rape-shield statute, we conclude that defendant has not established that counsel's failure to seek admission of the evidence "fell below an objective standard of professional reasonableness." See *Jordan*, 275 Mich App at 667.

## 2. STATEMENT TO PAROLE AGENT

Defendant next argues that trial counsel should have moved to suppress the statement he gave to Wheeler, his parole officer, because Wheeler did not read defendant his *Miranda*[5] rights. Defendant has waived this issue for appellate review.

---

[4] The same analyst testified that an analysis on a swab of sperm cells from the complainant's vulva indicated "it was at least 420 octillion times more likely that the DNA originated from [defendant], and two unknown, unrelated people than if it originated from three unknown, unrelated people."

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Prior to Wheeler's testimony, defendant's counsel questioned whether Wheeler's interview required *Miranda* warnings and whether there was any indication that such warnings had been given. After a bench conference, and counsel's consultation with defendant, counsel and defendant expressly agreed, on the record, that they would not pursue the objection. Wheeler then testified about his interview with defendant.

An informed and public waiver of a known right extinguishes any claim of error about that issue. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). In this case, defendant personally, expressly, and after consultation with his attorney, agreed to allow Wheeler to testify without objection. Defendant now wishes to transform this trial strategy into an "appellate parachute" by using it as a basis for a claim of ineffective assistance of counsel. See *id*. ("Counsel may not harbor error as an appellate parachute.") However, defendant having waived any objection to Wheeler's testimony, there is nothing to review. See *id*.

### 3. GREAT WEIGHT OF THE EVIDENCE

Defendant contends that, because the complainant's testimony was so incredible, trial counsel rendered ineffective assistance by failing to move for a new trial on the basis that the verdict was against the great weight of the evidence. We disagree, once again.

"[A] new trial may be granted if the verdict is against the great weight of the evidence." *Lemmon*, 456 Mich at 635. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). When the question is one of "credibility posed by diametrically opposed versions of the events in question," the test of credibility must be left with the trier of fact. *Lemon*, 456 Mich at 646-647.

As already discussed, defendant's convictions are supported by the complainant's testimony. Defendant has not shown that her testimony contradicted "indisputable physical facts or laws," "defie[d] physical realities," or was "so inherently implausible that it could not be believed by a reasonable juror." *Lemmon,* 456 Mich at 643–644. Nor has he shown that her testimony was so far impeached that it was deprived of all probative value. *Musser*, 259 Mich App at 219. Accordingly, there were no grounds for the trial court to negate her testimony or reject the jury's verdict. See *Lemmon*, 456 Mich at 643-644; *Musser*, 259 Mich App at 219. On this record, defendant has failed to show that a motion for a new trial based on allegations that the jury's verdict was against the great weight of the evidence could have succeeded. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### 4. PROSECUTORIAL MISCONDUCT

Lastly, defendant argues that trial counsel rendered ineffective assistance by failing to object "to prosecutorial misconduct where the prosecution made impermissible comments

concerning [d]efendant's Fifth Amendment right to remain silent during cross-examination and closing arguments." Defendant's claim is without merit.

Defendant testified that after he left the work site, he went to the nearby church where he said the complainant told him she was going. There, he encountered Officer Momber, and then an Officer Saxe. Officer Saxe placed defendant in his patrol vehicle and informed defendant of his *Miranda* rights. Defendant waived those rights and spoke with the officer. At trial, the prosecution asked defendant several questions about statements he made at trial that he had not made to Officer Saxe. Because defendant made statements after being given *Miranda* warnings, defendant did not remain silent, and the prosecutor could properly question him about his "failure to assert a defense subsequently claimed at trial." *People v Avant*, 235 Mich App 499, 509; 597 NW2d 864 (1999).

Likewise, there is no merit to defendant's claim that counsel should have objected to the prosecutor's observation during closing argument that defendant did not report to Officer Saxe the version of events he had presented at trial. A prosecutor may not make comments that shift the burden of proof to the defense. See *People v Fyda*, 288 Mich App 446, 464; 793 NW2d 712 (2010). However, a prosecutor may argue the evidence and all reasonable inferences arising from it as they related to his or her theory of the case. See *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). In the present case, the prosecutor was not commenting on defendant's silence; rather, he was comparing what defendant said to officers with what he had said at trial. The prosecutor did not commit misconduct in his cross-examination of defendant, and he did not commit misconduct by reiterating that cross-examination during his closing argument. Because the prosecution was not commenting on defendant's post-*Miranda* silence, any objection on that ground would have been futile. "Failing to . . . raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer